IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVE COLLIER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No.  13-cv-870-MJR-SCW |
| | ) |
| CHARLES W. CONRAD, | ) |
| | ) |
| Defendant. | ) |

<u>REPORT AND RECOMMENDATION</u>

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on a Motion for Summary Judgment filed by Charles Conrad (Docs. 15 & 16). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant Conrad's motion for summary judgment (Docs. 15 & 16).

### II.   Findings of Fact

**A.   Procedural Background**

On August 22, 2013, Plaintiff filed a Complaint against Defendant Conrad alleging that Conrad made sexual advances against him and then retaliated against Plaintiff when he refused those advances. Specifically, Plaintiff alleges that while at Big Muddy Correctional Center, Plaintiff worked in the dietary department where Defendant Conrad was a supervisor and Plaintiff's boss (Doc. 7 at p. 2). On or about November 10, 2012, Defendant made sexual advances toward Plaintiff which Plaintiff rebuffed (*Id.*). Plaintiff alleges that in the following months, Defendant threatened him

stating he would have to become a homosexual to continue working in dietary (*Id.*). On November 11, 2012, Defendant strip searched Plaintiff without provocation (*Id.*). Defendant also issued a disciplinary report against Plaintiff on November 11, 2012 in retaliation for rebuffing Defendant's sexual advances (*Id.* at pp. 2-3). In response to Defendant's actions, Plaintiff wrote a grievance on November 18, 2012 complaining about Conrad's behavior (*Id.* at p. 3). Plaintiff alleges that Defendant continued to harass him and that he wrote a second grievance on January 30, 2013 (*Id.*). Conrad issued another disciplinary ticket against Plaintiff on March 14, 2013 (*Id.*). On April 2, 2013, Plaintiff again filed a grievance against Conrad, particularly grieving the March 14, 2013 disciplinary report (*Id.*). Plaintiff's Complaint was divided into two counts: Count 1 alleges that Conrad sexually harassed and searched Plaintiff in an impermissible manner in violation of the Eighth Amendment, and Count 2 alleges that Conrad retaliated against Plaintiff for rebuffing his advances and filing grievances by writing him a disciplinary ticket.

In response to Plaintiff's Complaint, Defendant Conrad filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies (Docs. 15 & 16). Defendant argues that Plaintiff never submitted any of his grievances to the Administrative Review Board (ARB) as is required to fully exhaust his grievances. Defendant points out that Plaintiff attached one grievance to his Complaint that was exhausted at the institutional level. Plaintiff filed a grievance on November 18, 2012 (Doc. 1 at pp. 8-10) alleging that Defendant Conrad sexually harassed him and improperly touched him during strip searches. The strip searches performed by Conrad took place on November 11, 2012 and November 13, 2012. Plaintiff filed his grievance on November 18, 2012 and it was received and reviewed by the counselor on November 30, 2012 (Doc. 1 at p. 8). Plaintiff appealed the grievance to the grievance officer where it was received on February 19, 2013 and reviewed that same day. The grievance officer denied the grievance as Defendant

Conrad denied the allegation and another supervisor, Proctor, indicated that he did not witness any unprofessional conduct on the part of Conrad (*Id.* at p. 9). The Chief Administrative Officer concurred with the finding on February 26, 2013 (*Id.*). ARB Chairperson Terri Anderson stated in an affidavit that she did not receive any grievances from Plaintiff (Doc. 16 Ex. A at ¶ 7).

Plaintiff also attached two grievances to his Complaint regarding the retaliation claim against Defendant. Plaintiff attached a grievance dated January 30, 2013, which also alleged that Defendant Conrad harassed Plaintiff in retaliation for his grievance on Defendant's sexual advances (Doc. 1 at p. 13-14). Plaintiff's grievance indicated that Conrad continued to harass him by cursing at him during chow. Plaintiff believed that this was done in retaliation for Plaintiff writing Conrad up about his sexual advances against Plaintiff. The grievance does not contain any responses from Plaintiff's counselor or the grievance officer. Plaintiff also attached another grievance dated April 2, 2013 (Doc. 1 at pp. 15-16). Plaintiff alleged that Conrad sexually harassed him and that every time Plaintiff wrote a grievance about the behavior, Defendant Conrad retaliated against him. Plaintiff indicated that the most recent form of retaliation came in the form of a disciplinary ticket issued by Conrad against Plaintiff for disobeying a direct order (*Id.* at p. 16). This grievance also does not contain any responses from the institution.

Plaintiff filed a response in opposition to the motion (Doc. 18) arguing that he had exhausted all of the administrative remedies that were available to him. Plaintiff indicated that he sent his grievances to the ARB but they were lost and he never received responses to them. Specifically, he stated in his responsive brief that he received a returned request slip stating that the November 18, 2012 grievance to the ARB was lost by the mailroom. Plaintiff indicated in his motion that the request slip was attached to his brief as Exhibit A; however, no exhibits were attached to Plaintiff's brief. He also argues that in addition to filing his grievances, he reported his problems to the Sex

Abuse Hotline.

**B.** *Pavey* **Hearing**

Because the undersigned found that there were issues of fact as to whether Plaintiff exhausted his administrative remedies, the Court conducted a hearing on April 23, 2014 in accordance with *Pavey v. Conley*, **544 F.3d 739, 742(7th Cir. 2008).**

Defendant called Plaintiff to the stand to testify about his grievances. As to the November 18, 2012 grievance, Plaintiff testified that he attempted to send the grievance to the ARB but that the ARB never received the grievance. He testified that he placed the grievance in a pre-paid enveloped addressed to the ARB and sent it to the mailroom but never heard back from the ARB. Plaintiff then sent a request slip to the mailroom to locate his grievance as he had not heard anything from the ARB regarding his grievance in the three to four months following the date he sent out the grievance. Plaintiff testified that the mailroom responded to the slip, indicating that they never received the letter to the ARB. He testified that he then spoke with his counselor about the missing grievance and his counselor told him that the mailroom was backed up and to be patient in the mailing process. He again attempted to mail the grievance to the ARB but he never received a response.

Although Plaintiff testified that he was unable to send out his grievance through the mailroom, he acknowledged that other mail sent out of the institution reached its destination. However, the affidavit from the ARB indicated that they never received his November 18, 2012 grievance and Plaintiff acknowledged that statement as the grievance never reached the ARB, and according to Plaintiff, never reached the mailroom.

As to the other two grievances, dated January 30, 2013 and April 2, 2013 and dealing with Plaintiff's Count 2 retaliation claim, Plaintiff testified that while he did exhaust the grievances at the institutional level, he admitted that he did not submit the grievances to the ARB. Although the

grievances in his Complaint do not contain responses from the counselor or the grievance officer, Plaintiff testified that he did submit the grievances through the institutional process and received responses back from correctional staff. However, Plaintiff testified that he did not attempt to submit the grievances to the ARB due to his prior issues with mailing grievances to the ARB. He testified that it became apparent to him that the ARB was not an available route to exhaust his grievances due to the mail issues and he believed his only avenue for relief was through the counselor and grievance officer only. Plaintiff admitted that he made no attempts to mail these later grievances to the ARB.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton,* **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson,* **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry,* **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison

administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

**A.     Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance

Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's

decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

*1.      Count 2 Retaliation*

As to Plaintiff's Count 2 retaliation claim, the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies. Plaintiff testified at the *Pavey* hearing that he did not send the grievances to the ARB after receiving responses back from his counselor and grievance officer. Plaintiff stated that he believed that the ARB was unavailable to him because his November 18, 2012 grievance did not reach the ARB and thus he chose not to submit his January 30, 2013 and April 2, 2013 grievances to the ARB. However, exhaustion is required even if an inmate believes that it is futile. *See Dole v. Chandler*, **438 F.3d 804, 808-09 (7th Cir. 2006);** *Obriecht v. Raemisch*, **517 F.3d 489, 492 (7th Cir. 2008).** Thus, Plaintiff had to at least attempt to exhaust his administrative remedies by submitting his grievances to the ARB, even if he thought the grievances would ultimately not reach the ARB or the ARB would not respond. Instead, Plaintiff chose not to submit his

grievances to the ARB and thus he failed to exhaust his administrative remedies as to his retaliation claims. The undersigned **RECOMMENDS** that the Court **FIND** that as Plaintiff failed to exhaust his administrative remedies as to Count 2 that Plaintiff's retaliation claim against Defendant Conrad be **DISMISSED without prejudice**.

### 2. *Count 1 Sexual Harassment and Inappropriate Touching*

The undersigned also finds that Plaintiff failed to exhaust his administrative remedies as to Count 1 regarding his sexual harassment and inappropriate touching claim against Defendant Conrad. This claim was the subject of Plaintiff's November 18, 2012 grievance. Plaintiff testified that he attempted to exhaust this grievance with the ARB but that it was lost in the mailroom and never reached the ARB, even after two attempts. While Plaintiff can be deemed to have exhausted if he did all that he could to exhaust, **see Walker v. Sheahan, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); Brown v. Darnold, 2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002)),** the Court finds Plaintiff's testimony that he attempted to exhaust his administrative remedies with the ARB to lack credibility. Plaintiff's testimony, when combined with the statements in his responsive brief, are a mass of contradictions. Plaintiff testified at the hearing that he tried to mail out his November 18, 2012 grievance to the ARB on two occasions, a statement Plaintiff made for the first time at the *Pavey* hearing. Plaintiff never indicated in his brief that he attempted to mail the November grievance


twice.  Plaintiff also claimed that the mailroom was inadequately staffed which lead to his letter not being sent out to the ARB by the mailroom, yet he also testified that the mailroom never received the letter.  These two statements, that the mailroom didn't send out his letter due to inadequate staffing and that the mailroom never received his letter, cannot both be true.

Further, Plaintiff's testimony regarding the request slip he received from the mail room is suspect.  Plaintiff's brief indicated that he received a request slip from the mailroom and that it was attached as Exhibit A to his brief.  No such exhibit was attached.  At the hearing, however, Plaintiff testified that he did not have the request slip at the time he submitted his brief because his legal materials had not been transferred with him upon his transfer to Danville Correctional Center.  Plaintiff indicated that he referred to the exhibit in hopes that he would receive the slip, along with his legal materials, in the near future and then he could submit it to the Court.  However, his brief does not indicate that this request slip is missing.  Instead, Plaintiff refers to the request slip on two occasions in his brief and indicates that it is attached to his brief.  If Plaintiff did not have the request slip at the time of his writing the responsive brief, it is not clear why Plaintiff noted that the exhibit was attached instead of informing the Court that it was not currently in his possession and would be forwarded to the Court when he received his materials.  Plaintiff's testimony about the contents of the request slip is also suspect.  Plaintiff testified at the hearing that he submitted the slip to the mailroom inquiring about the status of his grievance to the ARB and the mailroom wrote back indicating that they never received the grievance.  However, Plaintiff stated in his brief that the mailroom told him that the grievance was lost.  Thus, Plaintiff presents the Court with two different versions of what happened to his November grievance.  Plaintiff's inconsistencies lead to the Court to conclude that his testimony, that he attempted to send the November grievance to the ARB, lacks credibility.

Plaintiff's testimony that he attempted to submit the grievance to the ARB through the mail also does not match the other facts in the record. Plaintiff acknowledged at the hearing that his other outgoing mail reached its destination and that it was only the grievance to the ARB that was not sent out. His testimony indicating that all of his other mail reached its destination also contradicts his statement that the issues with the mailroom was caused by inadequate staffing, as issues with the mailroom due to lack of staff would presumably affect all mail not just mail to the ARB. There is also no evidence in the record that the mailroom had staffing issues and Plaintiff never raised this issue prior to the hearing. The evidence, instead, suggests that mail was properly leaving the mailroom and reaching its destination. The fact that the only mail of Plaintiff's that did not reach its destination was his grievance to the ARB is highly suspect.

Thus, the undersigned finds that Plaintiff's testimony that he attempted to submit his grievance to the ARB lacks credibility. Plaintiff presented the Court with numerous, contradictory versions of events and his testimony regarding the request slip does not make sense logically. Further, Plaintiff testified that he, conveniently, no longer has the request slip in his possession. It appears to the Court that such a slip never existed. Plaintiff also readily admits that his other outgoing mail was reaching its destination during this same time period. Thus, given Plaintiff's credibility issues and the fact that outgoing mail was reaching its destination, the undersigned is left with the most logical conclusion that Plaintiff did not attempt to mail his grievance to the ARB. Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Defendant Conrad is also entitled to summary judgment on Plaintiff's Count 1 as Plaintiff failed to exhaust his administrative remedies as to this claim.

### IV.   Conclusion and Recommendation

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff has failed

to exhaust his administrative remedies as to Defendant Conrad on both Counts 1 and 2.  It is further **RECOMMENDED** that the Court **GRANT** Defendant Conrad's motion for summary judgment (Doc. 15 & 16) and **DISMISS without prejudice** the claims against him.

Should the Court adopt this Report and Recommendation no further claims will remain for trial.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**  Accordingly, Objections to this Report and Recommendation must be filed on or before **<u>May 12, 2014</u>**.


**IT IS SO ORDERED**.
DATED: April 24, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge